UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re:

Fred J. Heideker and                        Case No.: 9:08-bk-11910-FTM
Pamela D. Heideker,                          Chapter 13

_____Debtors_____/

In re:

Russell Knox,                                Case No.: 9:08-bk-18006-FTM
                                             Chapter 13

_____Debtor_____/

In re:

Edward Ravish and                            Case No.: 9:09-bk-24380-FTM
Anne Ravish,                                 Chapter 13

_____Debtors_____/

In re:

Ronald Russo and                             Case No.: 9:10-bk-01337-FTM
Tracy Russo,                                 Chapter 13

_____Debtors_____/


**CONSOLIDATED MEMORANDUM OPINION ON DEBTORS'
MOTIONS TO MODIFY CONFIRMED CHAPTER 13 PLANS**

Under the Eleventh Circuit's recent decision in *In re Tennyson*,[1] a debtor cannot confirm

a Chapter 13 plan for less than the full duration of Bankruptcy Code Section 1325(b)'s

_____

[1] 611 F.3d 873 (11th Cir. 2010).

applicable commitment period unless the debtor pays all unsecured claims in full. Each of the Debtors' Chapter 13 plans in these cases were confirmed for the full duration of the applicable commitment period. But the Debtors now seek to modify their confirmed plans under Section 1329 of the Bankruptcy Code to reduce the duration of their plans below the applicable commitment period. None of the Debtors, however, propose to pay their unsecured creditors in full under the proposed modifications.

Section 1325(b)'s applicable commitment period applies to plan modifications. As a consequence, a debtor cannot modify a Chapter 13 plan to reduce the plan's term below the applicable commitment period (over a trustee's objection) without paying all unsecured creditors in full. Because none of the Debtors propose to pay their unsecured creditors in full, the Court must deny the Debtors' motions to modify their confirmed Chapter 13 plans.

### Background

The facts of these cases are virtually identical. Each of the Debtors filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. The annualized current monthly income of the Debtors in three of the cases—*In re Heideker*, *In re Knox*, and *In re Russo*—exceeds the highest median income for households their size. So the applicable commitment period for the Debtors' Chapter 13 Plans in those cases is five years. The Debtors in the remaining case—*In re Ravish*—are below-median income Debtors. So the applicable commitment period for the Chapter 13 Plan in that case is three years.

Each of the Debtors proposed Chapter 13 Plans for the full duration of the relevant applicable commitment period. None of the Debtors proposed paying their unsecured creditors in full. The dividends for unsecured creditors ranged from 2.8% to 23.9% under the Debtors'

proposed Chapter 13 Plans. The Court confirmed the Debtors' proposed Chapter 13 Plans. After confirmation, each of the Debtors moved to modify their confirmed Chapter 13 Plan to pay it off early in one lump-sum payment. The amount the Debtors propose to pay to unsecured creditors, however, remains the same under the proposed modifications. In other words, none of the unsecured claims are paid in full under the Debtors' proposed modifications.

### Issue

The Chapter 13 Trustee objected to the Debtors' proposed modifications because they would shorten the length of the Debtors' Chapter 13 Plans below the Section 1325(b) applicable commitment period. The Debtors claim Section 1325(b)'s applicable commitment period does not apply to plan modification. Accordingly, the sole issue before the Court is whether Section 1325(b) applies to plan modifications.

### Conclusions of Law

*The Section 1325(b) Applicable Commitment Period*

The "applicable commitment period" was first introduced in 2005 when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[2] Before BAPCA, the court could not confirm a Chapter 13 plan over an objection by the trustee unless the plan provided that all of the debtor's projected disposable income to be received during a three-year period (beginning on the date the first payment is due under the plan) would be applied to payments under the plan.[3]

BAPCPA replaced the three-year repayment period in Section 1325(b)(1)(B) with the

---

[2] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 318, 119 Stat. 23 (2005).

[3] 11 U.S.C. § 1325(b)(1)(A)-(B) (2004).

"applicable commitment period."  Now, if a trustee objects to plan confirmation, the court

cannot confirm the debtor's proposed plan unless the "plan provides that all of the debtor's

projected disposable income to be received in the *applicable commitment period . . .* will be

applied to make payments to unsecured creditors under the plan."[4] The "applicable commitment

period" depends on whether the debtor's income is above or below the median income. If the

debtor is an above-median income debtor, the applicable commitment period is five years.[5] The

applicable commitment period for a below-median income debtor is three years.[6] In any case,

the applicable commitment period may not be less than three or five years (whichever applies)

unless the debtor's plan pays all allowed unsecured claims in full.[7]

*The Applicable Commitment Period is a Durational Requirement*

Within two years after BAPCPA was enacted, courts could not reach a consensus on

how to interpret many of its provisions.[8] Courts, for instance, reached "diametrically opposed

legal conclusions" on "issues as basic as a debtor's eligibility to file bankruptcy, the

applicability of the automatic stay, the rights of secured vehicle creditors and the calculation of

disposable income in chapter 13."[9] And so it was with the applicable commitment period.[10]

---

[4] 11 U.S.C. § 1325(b)(1)(A)-(B) (2010).

[5] 11 U.S.C. § 1325(b)(4)(A)(ii).

[6] 11 U.S.C. § 1325(b)(4)(A)(i).

[7] 11 U.S.C. § 1325(b)(4)(B).

[8] Hon. Thomas F. Waldron & Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA*, 81 Am. Bankr. L. J. 195, 195-96 (2007) (footnotes omitted).

[9] *Id.*

[10] *In re Slusher*, 359 B.R. 290, 300 (Bankr. D. Nev. 2007) (explaining that "[a]lthough apparently straightforward, as with much of BAPCPA, the text Congress used plausibly lends itself to at least two different interpretations of what exactly 'applicable commitment period' means").

Some courts viewed the applicable commitment period as a "multiplier," requiring debtors to pay into their plan the equivalent of their projected disposable income multiplied by the number of months in their applicable commitment period.[11] Other courts viewed it as a durational or temporal requirement.[12] Under the temporal approach, Chapter 13 debtors were required to stay in their plan for three or five years, depending on whether they were above or below-median income debtors.[13]

The Eleventh Circuit recently resolved that issue in *In re Tennyson*.[14] There, the Eleventh Circuit held that the applicable commitment period was a temporal requirement prescribing the minimum duration of a debtor's Chapter 13 bankruptcy plan.[15] In *Tennyson*, the debtor was an above-median income debtor with a negative disposable income. So the debtor's applicable commitment period was five years. Nevertheless, the debtor proposed a three-year plan that did not provide for full payment to his unsecured creditors. The Bankruptcy Court, following the "multiplier approach," confirmed the debtor's proposed plan over the trustee's objection.[16] The district court affirmed.[17]

---

[11] *See e.g., In re Loptaka*, 400 B.R. 433, 440 (Bankr. M.D. Pa. 2009); *In re McGillis*, 370 B.R. 720, 734 (Bankr. W.D. Mich. 2007); *In re Swan*, 368 B.R. 12, 23-27 (Bankr. N.D. Cal. 2007); *In re Brady*, 361 B.R. 765, 776-77 (Bankr. D.N.J. 2007); *In re Fuger*, 347 B.R. 94, 101 (Bankr. D. Utah 2006).

[12] *In re Frederickson*, 545 F.3d 652, 660 (8th Cir. 2008); *In re Grant*, 364 B.R. 656, 662-63 (Bankr. E.D. Tenn. 2007); *In re Luton*, 363 B.R. 96, 101 (Bankr. W.D. Ark. 2007); *In re Nance*, 371 B.R. 358, 369 (Bankr. S.D. Ill. 2007); *In re Slusher*, 359 B.R. at 301; *In re Cushman*, 350 B.R. 207, 212-13 (Bankr. D.S.C. 2006); *In re Casey*, 356 B.R. 519, 527 (Bankr. E.D. Wash. 2006); *In re Dew*, 344 B.R. 655, 661 (Bankr. N.D. Ala. 2006).

[13] *In re Frederickson*, 545 F.3d at 660; *In re Grant*, 364 B.R. at 662-63; *In re Luton*, 363 B.R. at 101; *In re Nance*, 371 B.R. at 369; *In re Slusher*, 359 B.R. at 301; *In re Cushman*, 350 B.R. at 212-13; *In re Casey*, 356 B.R. at 527; *In re Dew*, 344 B.R. at 661.

[14] *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010).

[15] *Id.* at 880.

[16] *Id.* at 876.

On appeal, the Eleventh Circuit initially observed that the issue (*i.e.*, whether the applicable commitment period is a multiplier or a durational requirement) was one of statutory interpretation. Consequently, the court was guided by traditional standards of statutory construction. The *Tennyson* court then noted that "applicable" and "commitment" modified the term "period" and that the plain meaning of "period" denotes a duration.[18] So the *Tennyson* court concluded that the applicable commitment period was a "duration to which the debtor is obligated to serve."[19] Because Section 1325(b)(4) provides that the applicable commitment period "shall" be five years for above-median income debtors, and "shall" is ordinarily the language of command, the *Tennyson* court concluded that an above-median income debtor "is obligated to form a bankruptcy plan with an 'applicable commitment period' of no less than five years, unless his unsecured debts are paid in full."[20]

Although its holding was mandated by Section 1325(b)(4)'s plain language, the *Tennyson* court went on to note that BAPCPA's legislative history also compels the finding that the applicable commitment period is a durational requirement. The "'heart of [BAPCPA's] consumer bankruptcy reforms,'" the court observed, "'is intended to ensure that debtors repay creditors the maximum they can afford.'"[21] And the House Report discussing BAPCPA's amendment to Sections 1322(d) and 1325(b) specifically provides that Congress amended those sections "to specify that a chapter 13 plan may not provide for payments over a period that is

---

[17] *Id.*

[18] *Id.* at 877.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 879 (quoting H.R. Rep. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89).

not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds."[22]

But if an above-median income debtor was able to confirm a three-year plan, unsecured creditors would be deprived of an opportunity to collect on their unsecured claims if the debtor's income increased in years four and five. That outcome, the *Tennyson* court concluded, was inconsistent with Congressional intent:

> The Congressional intent to make sure that debtors repay creditors up to their maximum ability would be contravened by permitting confirmation of a bankruptcy plan for less than five years when unsecured claims have not been paid in full.[23]

Accordingly, the *Tennyson* court held that the applicable commitment period is a "temporal term that prescribes the minimum duration of a debtor's Chapter 13 bankruptcy plan."[24] The only exception, according to the *Tennyson* court, is if unsecured claims are paid in full.[25] Because the debtor in *Tennyson* failed to pay his unsecured creditors in full, the Court held he was required to "submit to Chapter 13 bankruptcy for a minimum of five years."[26]

*The Applicable Commitment Period Applies to Modifications Under Section 1329*

The Debtors, however, claim *Tennyson* is not dispositive because *Tennyson* only dealt with plan confirmation under Section 1325, and the Debtors are seeking to modify their confirmed plans under Section 1329. Section 1329(a), of course, provides that a debtor may

---

[22] H.R. Rep. No. 109-31, pt. 1, at 79, *as reprinted in* 2005 U.S.C.C.A.N. 88, 146.

[23] *Tennyson*, 611 F.3d at 879.

[24] *Id.* at 880.

[25] *Id.*

[26] *Id.*

modify a confirmed plan to, among other things, extend or reduce the time for plan payments.[27] Section 1329(b) expressly provides that a debtor's ability to modify a confirmed plan under Section 1329(a) is subject to Sections 1322(a), 1322(b), and 1323(c), as well as the "requirements" of Section 1325(a).[28]

Not surprisingly, courts disagree over whether Section 1329 incorporates Section 1325(b)'s applicable commitment period. A number of courts have held that it does not.[29] That view is perhaps best articulated by the Northern District of Illinois' recent decision in *In re Davis*,[30] a case relied on by the Debtors. In *Davis*, the debtor was an above-median income debtor. But she was able to confirm a 54-month plan because she paid her unsecured claims in full under the plan. After her Chapter 13 plan was confirmed, however, the debtor lost her job. So she moved to modify her plan to reduce the monthly payment and shorten the length of the plan from 54 months to 35 months (below the applicable commitment period). Unsecured creditors would no longer be paid in full under the debtor's proposed modification. The trustee objected because the plan length did not comply with Section 1325(b).

---

[27] 11 U.S.C. § 1329(a)(2).

[28] 11 U.S.C. § 1329(b)(1).

[29] *See e.g., In re Davis*, 439 B.R. 863, 866 (Bankr. N.D. Ill. 2010); *In re Kearney*, 439 B.R. 694, 696 (Bankr. E.D. Wis. 2010); *In re McCully*, 398 B.R. 590, 593-94 (Bankr. N.D. Ohio 2008); *In re Hill*, 386 B.R. 670, 675-76 (Bankr. S.D. Ohio 2008); *In re Howell*, No. 07-80365, 2007 WL 4124476, at *1 (Bankr. W.D. La. 2007); *In re Ewers*, 366 B.R. 139, 142-44 (Bankr. D. Nev. 2007); *In re Young*, 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007); *but see In re King*, 439 B.R. 129, 134-37 (Bankr. S.D. Ill. 2010); *In re Buck*, 443 B.R. 463, 470 (Bankr. N.D. Ga. 2010).

[30] *In re Davis*, 439 B.R. at 865-69.

The primary issue before the court was whether Section 1325(b) applied to plan modification under Section 1329. The *Davis* court held that it did not for three reasons.[31] First, the court determined that the language of Section 1325(b) itself does not apply to plan *modification*.[32] Section 1325(b), according to the court, only applies to plan *confirmation*. Second, Section 1325(b) is not made applicable to plan modification through Section 1329.[33] Section 1329(b) expressly provides that four code sections—Section 1322(a), Section 1322(b), Section 1323(c), and the "requirements" of Section 1325(a)—apply to modification under Section 1329(a). Applying the well-known maxim *expression unius est exclusio alterius*, the *Davis* court concluded that Congress intended to exclude Section 1325(b).[34] Third, the court concluded that no absurdity results if Section 1325(b) does not apply to modifications because Section 1325(a)(3)'s good faith requirement provides a standard for governing plan length.[35]

Most courts holding that Section 1325(b) does not apply to plan modification principally rely on the reasons articulated in *Davis*.[36] But courts have offered additional reasons in support of their holding, as well. For instance, the court in *In re Ewers* reasoned that applying Section 1325(b) to plan modification would render Section 1329(a)(2) a nullity.[37] Section 1329(a)(2), of

---

[31] *Id.* at 864.

[32] *Id.* at 866.

[33] *Id.* at 866-67.

[34] *Id.*; *see also In re Kearney*, 439 B.R. at 696; *In re McCully*, 398 B.R. at 593; *In re Ewers*, 366 B.R. at 142-43; *In re White*, 411 B.R. 268, 272-73 (Bankr. W.D.N.C. 2008); *In re Kidd*, 374 B.R. 277, 282 (Bankr. D. Kan. 2007).

[35] *In re Davis*, 439 B.R. at 868.

[36] *In re Kearney*, 439 B.R. at 696; *In re McCully*, 398 B.R. at 593; *In re Ewers*, 366 B.R. at 142-43.

[37] *In re Ewers*, 366 B.R. at 143.

course, permits debtors to modify their plans to reduce the time for payment. But the *Ewers* court explained that no above-median income debtor could modify their plan to reduce the term below the applicable commitment period if Section 1325(b) applied to plan modification, effectively rendering Section 1329(a)(2) a nullity for above-median income debtors.[38] That result, the *Ewers* court concluded, was also inconsistent with Section 1329's legislative history. Section 1329's legislative history generally recognizes that unforeseen events can occur in a debtor's life during the term of a Chapter 13 plan.[39] So debtors must have a chance to modify their plans in those cases.

The Court, however, is not persuaded by *Davis* and the other courts holding that Section 1325(b) does not apply to plan modification. To begin with, Section 1329 does, as many courts have recognized, implicitly incorporate Section 1325(b).[40] Section 1329(b) provides that the requirements of Section 1325(a) apply to modifications under Section 1329(a).[41] And Section 1325(a), in turn, specifically references Section 1325(b).[42] The initial clause in Section 1325(a) reads: "Except as provided in subsection (b)."

The *Davis* court dismisses the idea that Section 1325(b) is implicitly incorporated into Section 1329 through Section 1325(a) by focusing on the phrase "requirements of Section

[38] *Id.*

[39] *Id.* at n.8 (citing H.R. Rep. No. 95-595, at 125 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 5963, 6086).

[40] *See e.g., In re King*, 439 B.R. 129, 134 (Bankr. S.D. Ill. 2010); *In re Buck*, 443 B.R. 463, 469 (Bankr. N.D. Ga. 2010); *In re Keller*, 329 B.R. 697, 701-02 (Bankr. E.D. Cal. 2005); *see also* 11 U.S.C. § 1325(a) (stating "[e]xcept as provided in subsection (b)").

[41] 11 U.S.C. § 1329(b).

[42] 11 U.S.C. § 1325(a).

1325(a)."[43] According to the *Davis* court, a requirement is a "requisite or essential condition."

The *Davis* court explained that the only "requirements" in Section 1325(a) are subsections (1)

through (9). Section 1325(b), according to the *Davis* court, is an exception to confirmation, not

a requirement:

> Rather than a prerequisite for confirmation, § 1325(b) is an
> exception to the confirmation that § 1325(a) otherwise mandates.
> Section 1325(a) states that courts must confirm a plan that meets
> its nine requirements; § 1325(b) has the potential for preventing
> that result. Nothing in § 1325(b) is required for confirmation. No
> party is required to object to confirmation under that subsection,
> and even if grounds for objection are present, a plan may be
> confirmed if the objection is not made.[44]

But that analysis misses the mark. Section 1325(b) is a requirement (*i.e.*, a requisite or

essential condition) if the trustee or a holder of an unsecured claim objects to plan confirmation.

If the trustee objects to confirmation, the court cannot confirm the debtor's plan unless the plan

applies all of the income the debtor receives during the applicable commitment period to the

unsecured claims.[45] And the applicable commitment period cannot be less than three or five

years (whichever applies) unless the debtor pays all unsecured claims in full.[46] The same is true

for plan modification: the applicable commitment period applies to plan modification if the

trustee or holder of an unsecured claim objects to the proposed modification.[47]

---

[43] *In re Davis*, 439 B.R. 863, 867 (Bankr. N.D. Ill. 2010).

[44] *Id.*

[45] 11 U.S.C. § 1325(b)(1)(B).

[46] 11 U.S.C. § 1325(b)(4)(B); *see also In re Tennyson*, 611 F.3d 873, 879-80 (11th Cir. 2010).

[47] *In re Braune*, 385 B.R. 167, 171 (Bankr. N.D. Tex. 2008) (holding that "[i]n the context of modification, the [Section 1325(b)] disposable income test applies only when either the chapter 13 trustee or an unsecured creditor objects to the modification pursuant to Code § 1325(b)(1)").

In fact, the Southern District of Illinois, in *In re King*, provided the following "augmented" version of Section 1325(b) to explain the interplay between Section 1325(b) and Section 1329:

> (b)(1) If the Trustee or the holder of an allowed unsecured claim objects to *[modification]* of the plan, then the court may not approve the *[modified]* plan unless as of the effective date of the *[modified]* plan—
>
> \*\*\* \*\*\* \*\*\*
>
> (B) the *[modified]* plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period *([which]* begin[s] on the date that the first payment is due under the *[original]* plan)* will be applied to make payments to unsecured creditors under the *[modified]* plan.[48]

The Court is convinced that interpreting Section 1329 to incorporate Section 1325(b), as reflected in the *King* court's "augmented" version of Section 1325(b), is most consistent with the plain meaning of those provisions.

Moreover, it does not render Section 1329(a)(2) a nullity. Interpreting Section 1329 to incorporate Section 1325(b) does mean that above-median income debtors cannot modify their plan to reduce the term below the applicable commitment period (unless they propose to pay their unsecured debts in full). But Section 1329 still applies to many below-median income debtors. The fact that one subsection of a statute may be inapplicable to one category of debtors does not render the statute superfluous.[49]

---

[48] *In re King*, 439 B.R. 129, 138 (Bankr. S.D. Ill. 2010).

[49] *In re Buck*, 443 B.R. 463, 470 (Bankr. N.D. Ga. 2010).

In fact, not only does it not render Section 1329(a)(2) a nullity, it is the only interpretation that gives meaning to Bankruptcy Code Section 521(f).[50] Under Section 1329, the trustee and holders of unsecured claims—not just the debtor—may seek to modify a Chapter 13 plan after confirmation.[51] BAPCPA amended Section 521 to require debtors to submit annual tax returns at the request of any interested party.[52] That requirement allows interested parties to determine whether a debtor's financial circumstances have changed for the better. If so, the interested party can seek to modify the debtor's plan.

If Section 1325(b) does not apply to modifications, the debtor can prevent interested parties from exercising those rights by simply "paying off" the plan early.[53] In other words, not applying Section 1325(b) to plan modification would permit a debtor to effectively render Section 521(f) meaningless. As one court observed, that "'result would be of particular benefit to wealthy debtors who might have exempt reserves, such as IRAs, from which to fund immediate completion of a chapter 13 plan upon confirmation with no regard to future increases in income.'"[54]

Such a result would also be completely inconsistent with Congress' intent in enacting BAPCPA. "The heart of [BAPCPA's] consumer bankruptcy reforms . . . is intended to ensure

---

[50] *In re King*, 439 B.R. at 136 (citing *In re Slusher*, 359 B.R. 290, 304-05 (Bankr. D. Nev. 2007)).

[51] 11 U.S.C. § 1329(a).

[52] 11 U.S.C. § 521(f); *see also* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 315(b), 119 Stat. 23 (2005).

[53] *In re Keller*, 329 B.R. 697, 700 (Bankr. E.D. Cal. 2005) (explaining that "when a debtor makes an accelerated lump sum payment rather than the regular monthly payments required by the plan, the debtor is preempting the right of the trustee and the unsecured creditors to proposed a modified plan should circumstances (such as an increase in the debtor's income) warrant a modification").

[54] *In re Slusher*, 359 B.R. 290, 305 (Bankr. D. Nev. 2007) (quoting Alane A. Becket & Thomas A. Lee, III, *Applicable Commitment Period: Time or Money?*, Am. Bankr. Inst. J. 16, 44 (March 2006)).

that debtors repay creditors the maximum they can afford."[55] As the *Tennyson* court explained, that intent "would be contravened by permitting confirmation of a bankruptcy plan for less than five years when unsecured claims have not been paid in full."[56] For that reason, the *Tennyson* court held that an above-median income debtor "must submit to Chapter 13 bankruptcy for a minimum of five years."[57] As the court in *In re King* recognized, "[t]here would be little point in requiring an above-median income debtor to propose a five-year plan for purposes of confirmation if that same debtor could simply turn around and modify their plan to provide for a lesser term."[58] After all, the same Congressional intent articulated in *Tennyson* would likewise be contravened by permitting debtors to modify a plan to reduce the term to less than the applicable commitment period when unsecured claims have not been paid in full.

Some courts have attempted to avoid this seemingly obvious absurdity by inviting the trustee or unsecured creditors to object to a modification that reduces the term of the plan below the applicable commitment period on the basis that it has not been proposed in good faith under Section 1325(a)(3).[59] But at least one court has noted that resort to the good faith requirement of Section 1325(a)(3) is "ironic given that section 1325(b) was added to the Bankruptcy Code in 1984 because of a 'spate of discordant judicial opinions concerning whether the "good faith"

---

[55] H.R. Rep. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89; *see also In re Wisham*, 416 B.R. 790, 798 (Bankr. M.D. Fla. 2009) (stating that the "Court recognizes the stated desire of Congress to maximize the funds that are paid to unsecured creditors in bankruptcy").

[56] *Tennyson*, 611 F.3d 873, 879 (11th Cir. 2010).

[57] *Id.* at 880.

[58] *In re King*, 439 B.R. 129, 135 (Bankr. S.D. Ill. 2010).

[59] *In re Davis*, 439 B.R. 863, 868-89 (Bankr. N.D. Ill. 2010); *see also In re White*, 411 B.R. 268, 272-73 (Bankr. W.D.N.C. 2008); *In re Howell*, No. 07-80365, 2007 WL 4124476, at *1 (Bankr. W.D. La. 2007).

clause imposes minimum debt-repayment requirements as prerequisites to the confirmation of chapter 13 plans.'"[60] Before the 1984 amendments, courts imposed "'subjectively contrived refinements'" on subsections 1325(a)(4), (5), and (6) through Section 1325(a)(3)'s good faith requirement.[61] Inviting trustees and holders of unsecured claims to now object to plan modification under Section 1325(a)(3) rather than Section 1325(b) "once again threatens to place chapter 13 debtors at the mercy of a good faith standard that is sure to produce disparate results and be arbitrary in its application."[62] That was precisely what Congress sought to avoid.[63]

## Conclusion

This Court is bound to follow the Eleventh Circuit. Although *Tennyson* did not involve plan modification, the court's rationale in that case compels this Court to conclude that the Eleventh Circuit would, if given the opportunity, hold that Section 1325(b) is applicable to plan modifications. To hold otherwise, would contravene the plain meaning of Sections 1325(b) and 1329, as well as Congress' intent in enacting BAPCPA. Worse, it would effectively eviscerate the Eleventh Circuit's decision in *Tennyson*.

---

[60] *In re Keller*, 329 B.R. 697, 702 (Bankr. E.D. Cal. 2005) (quoting Oversight Hearing on Personal Bankruptcy Before the H. Subcomm. on Monopolies and Commercial Law of the H. Comm. on the Judiciary, 97th Cong. 184-85 (1997) (testimony of Judge Conrad K. Cyr)).

[61] *Id.* at 702-03 (quoting Oversight Hearing on Personal Bankruptcy Before the H. Subcomm. on Monopolies and Commercial Law of the H. Comm. on the Judiciary, 97th Cong. 184-85 (1997) (testimony of Judge Conrad K. Cyr)).

[62] *Id.* at 703.

[63] *In re King*, 439 B.R. 129, 137 (Bankr. S.D. Ill. 2010) ("The congressional record, while scant, reveals that two of Congress' primary objectives in enacting bankruptcy reform legislation were to (1) *limit* judicial discretion in determining the appropriate amount to be repaid through bankruptcy and (2) maximize recovery to unsecured creditors.") (citing H.R. Rep. No. 109-31, pt. 1, at 2, *as reprinted in* 2005 U.S.C.A.N. 88, 89) (emphasis in original).

Accordingly, the Court holds that if a trustee objects to a debtor's proposed plan modification, the debtor cannot shorten the term of the plan below the applicable commitment period unless the debtor pays all unsecured claims in full. Because the Debtors' proposed modifications in these cases do not propose to pay unsecured claims in full, the Court must deny the Debtors' motions to modify. The Court will enter appropriate Orders in each of the above-captioned Chapter 13 cases on the Debtors' motions to modify.

**DATED** in Chambers at Fort Myers, Florida, on _____June 02, 2011_____.

_____
DAVID H. ADAMS
United States Bankruptcy Judge

Copies to be provided via CM/ECF

16